UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

*Electronically Filed*

| | |
|---|---|
| CHECKCARE ENTERPRISES, LLC | ) |
| | ) |
| PLAINTIFF | ) |
| | ) |
| v. | ) |
| | ) |
| S&D HOLDINGS, LLC D/B/A | ) CIVIL ACTION NO. _____ |
| CHECKCARE SYSTEMS MEMPHIS; | ) |
| PAYTEK SOLUTIONS, LLC; AND | ) |
| SUSAN PERLMUTTER | ) |

DEFENDANTS

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Comes the Plaintiff Checkcare Enterprises, LLC ("Plaintiff") and for its Complaint for Injunctive Relief against Defendants S&D Holdings, LLC d/b/a Checkcare Systems Memphis; Paytek Solutions, LLC; and Susan Perlmutter, (collectively "Defendants") alleges as follows:

### INTRODUCTION

1.  Plaintiff is the owner and operator of a franchise system which provides to merchants for a fee check guarantee, check recovery, check verification, E-check, and other payment related products and services ("System"). These services substantially decrease the time and expense merchants invest in collecting on returned checks and losses resulting from acceptance of bad checks. Customers of the System are typically long-term, allowing the franchisee and the franchisor to derive substantial revenue over time.

2. Defendant S&D Holdings, LLC d/b/a Checkcare Systems Memphis ("S&D") is the owner of an exclusive franchise of Plaintiff's System in the Memphis and St. Louis geographic areas. S&D is owned and operated by Defendant Susan Perlmutter. On information and belief, Defendant Paytek Solutions, LLC ("Paytek") is an additional entity owned and operated by Perlmutter which provides check guarantee, check recovery, check verification, E-check, and other payment related products and services substantially similar to those constituting Plaintiff's System.

3. On May 31, 2006, S&D sent Plaintiff written notice it would no longer be a franchisee of the System effective June 1, 2006. However, it is believed that S&D and/or Perlmutter and/or Paytek are now selling services and products substantially similar to those of Plaintiff's franchise system to merchants in the Memphis and St. Louis areas in direct violation of the Agreements, including the covenants not to compete and confidentiality provisions set forth therein. If Defendants are permitted to continue this course of action, Plaintiff will suffer irreparable harm. Defendants' actions are certain to confuse existing and potential customers and are a direct threat to Plaintiff's interests in its franchise System, its trademarks, in its goodwill and commercial relations with its customers and other agents, and in its business reputation. Plaintiff comes to this Court seeking the injunctive relief to which it is entitled under federal statute, common law, and the parties' agreement to protect it from irreparable harm until the arbitration called for by the parties' agreement can be completed.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over S&D and Paytek as they are Tennessee limited liability companies with their shared principal place of business at 4821 American Way #202, Memphis, Tennessee 38118. Likewise, this Court has personal jurisdiction over Perlmutter who is a resident of Tennessee. Venue also is proper in this Court because of Defendants' domicile and business activities in and around this District.

5. Plaintiff is a Kentucky limited liability company with its principal place of business in Louisville, Kentucky.

6. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332, by reason of the diversity of citizenship of the parties and that, without the granting of injunctive relief, Plaintiff will suffer irreparable damages and damages in an amount in excess of $75,000, exclusive of interest and costs.

7. This matter is subject to arbitration with the American Arbitration Association pursuant to the applicable agreements, with the exception of Plaintiffs' ability to seek temporary and/or preliminary injunctive relief under sections 14, 22, and 23 of the agreements.

## FACTUAL ALLEGATIONS

8. S&D became the exclusive franchisee of Plaintiff's System in the Memphis area pursuant to a written contract between Plaintiff's predecessor and S&D dated August 4, 1998.

3

9. On or about October 6, 2003, S&D sent a letter to Plaintiff advising that if certain complaints were not addressed, S&D would not renew its franchise agreement beyond its expiration date of August 4, 2005. About this same time, S&D became a plaintiff in litigation/arbitration filed by a number of Plaintiff's franchisees against Plaintiff. Through a series of settlements and other accommodations, the primary issues raised by the franchisees in that litigation/arbitration were resolved and that matter has remained idle for more than 2 years.

10. Despite the 2003 complaint letter and litigation/arbitration, S&D did continue to participate in the System well beyond 2003 and also well beyond the franchisee agreement's expiration date of August 4, 2005. Moreover, on March 1, 2005, S&D assumed an additional franchise agreement relating to the St. Louis area. That agreement was also effective August 4, 1998 and is substantially similar to the agreement relating to the Memphis area.[1]

11. Pursuant to its franchise agreement, from August 4, 1998 until May 31, 2006, S&D marketed, promoted, and sold check guarantee, check recovery, check

---

[1] S&D signed a Franchise Agreement dated August 4, 1998 relating to the Memphis area with Plaintiff's predecessor in interest, Checkcare Enterprises, Inc. Checkcare Enterprises, Inc. assigned all of its rights and obligations under that and other franchise agreements to Plaintiff on February 11, 2002. On March 5, 2005, S&D assumed an additional franchise agreement relating to the St. Louis area which was originally executed by Checkcare Enterprises, Inc. and GCB Enterprises, also on August 4, 1998. The two franchise agreements are substantially similar and shall be referred to hereinafter as the "Agreements". A copy of S&D's agreement for the Memphis areas is attached hereto as Exhibit A. A copy of the agreement whereby S&D assumed the St. Louis franchise is attached as Exhibit B. A copy of S&D's October 2003 complaint letter is attached as Exhibit C. That letter expressly acknowledged the Agreements' seven year term.

verification, E-check, and other payment related products and services constituting Plaintiff's System in the Memphis area. Similarly, from its franchise assumption on March 1, 2005 until May 31, 2006 S&D marketed, promoted, and sold check guarantee, check recovery, check verification, E-check, and other payment related products and services constituting Plaintiff's System in the St. Louis area. S&D derived substantial revenues from this activity.

12. On or about June 5, 2006, Plaintiff received written notice from S&D that S&D "ceased to operate a CheckCare Franchise," effective June 1, 2006.[2] While the notice indicated S&D would cease using CheckCare service marks and the like, it gave no indication S&D intended to honor the two-year non-competition provisions of the Agreements or to return files, customer lists, software, and the like as required by the Agreements in the event of termination or expiration of the Agreements.

13. Section 14 of the Agreements sets forth numerous covenants for Plaintiff and S&D to abide by, including a covenant that S&D not compete, directly or indirectly, with Plaintiff or any other franchisee within the geographic areas defined by the Agreements for two years after termination.

14. Section 14(k) expressly provided that Plaintiff may reduce the scope of any covenants. Plaintiff exercised this right in March of 2006, reducing the reach of the non-compete and establishing the following covenant regarding post-expiration/termination competition:

---

[2] A copy of the written notice is attached hereto as Exhibit D.

> Franchisee covenants that during the term of the Agreement, any renewal thereof, and for a period of two (2) years after the expiration or termination of this Agreement, Franchisee shall not compete against Franchisor or any other Franchisee of Franchisor within the Franchise Area for himself, or through, on behalf of, or in conjunction with any person, persons, partnership, or corporation by: (1) engaging, as principal, manager or in a supervisory capacity in any Competing Business; (2) by having an ownership interest in any Competing Business; or (3) by serving as an employee of or consultant to any Competing Business, wherein franchisee would, in the regular and ordinary course of such employment or consultation, be called upon to reveal, base judgment upon, or otherwise use any Confidential Information or Trade Secrets that Franchisee received, obtained or acquired during, or as a consequence of conducting the Franchise Business.[3]

15.  Since attempting to unilaterally cancel the Agreements, S&D and/or Perlmutter have continued, in both the Memphis and St. Louis metropolitan areas, to promote, market and/or sell check guarantee, check recovery, check verification, E-check, and other payment related products and services substantially similar to the services which constitute Plaintiff's System in direct violation of the non-compete provisions of the Agreements.

16.  Plaintiff has recently learned that Paytek is owned and operated by Perlmutter and that Paytek, perhaps since its inception in November 2004 and certainly in more recent months, has been promoting, marketing and/or selling check guarantee, check recovery, check verification, E-check, and other payment related products and services substantially similar to the services which constitute Plaintiff's System. In light of Perlmutter's close affiliation with and substantial/complete ownership of both S&D

---

[3] A copy of the March 10, 2006 letter adjusting the scope of the non-compete from Plaintiff to S&D and Perlmutter is attached hereto as Exhibit E.

Paytek, these actions by Paytek and Perlmutter are in direct violation of the non-compete provisions of the Agreements.[4]

17.  In addition to violating the non-competition provisions of the Agreements, S&D has failed to comply with most/all of the "obligations upon termination" set forth in Paragraph 13 of the Agreements.  For example, S&D has failed to return to Plaintiff files of clients, all lists of customers and potential customers, all manuals and software, and all uncollected checks as required by section 13(g) of the Agreements.

18.  At the latest, Defendants began competing directly with Plaintiff on May 31, 2006 and may have been doing so for much longer.  Such competition is in direct violation of the Agreements' 2 year restriction on competition within the designated areas.  The Agreements expired August 4, 2005, but S&D continued to perform under the Agreements and within the System until May 31, 2006.  Plaintiff submits that with S&D's continued participation in the System, the non-compete should be in effect until May 31, 2008.  However, even taking the narrow view that the covenant began to run upon the passing of the Agreements' expiration date, Defendants are still over a year away from when they may begin competing with Plaintiff in the Memphis and St. Louis areas.  Moreover, whenever it is determined the Agreements expired or were terminated,

---

[4] According to the Tennessee Secretary of State's website, Paytek was formed in November of 2004.  A check of Paytek's website reveals it offers services nearly identical to Plaintiff's System.  It should also be noted that Paytek's local phone and fax numbers are the same numbers S&D used while it was operating within Plaintiff's System.  Documents relating to Paytek's formation and service offerings are attached as collective Exhibit F.

they place numerous obligations for the return of information to Plaintiff which S&D has thus far ignored.

19. The Agreements provide for most disputes between the parties to be arbitrated. However, section 14(p) of the Agreements provides that violations of certain covenants contained therein, including the covenant not to compete, "would cause irreparable damage to Franchisor and that Franchisor shall be entitled to injunctive relief against Franchisee, including but not limited to a temporary restraining order, a temporary injunction, and a permanent injunction...." Similarly, section 22(b)(iv) of the Agreements states that "[n]othing herein contained shall prevent or bar either party from obtaining injunctive relief against any anticipatory breach or threatened conduct that will cause irreparable loss or damage, under the usual rules of equity." Section 23(d) of the Agreements also provides "[n]othing herein contained shall bar Franchisor's right to obtain injunctive relief against threatened conduct that will cause it loss or damages, under the usual equity rules, including the applicable rules for obtaining restraining orders and preliminary injunctions."

20. As a franchisee in Plaintiff's System, S&D and Perlmutter were provided proprietary information and trade secrets which Plaintiff invested enormous sums to develop and which are vital to the success of Plaintiff. S&D and Perlmutter were also in a position to acquire confidential contact and personal information regarding numerous customers. Defendant's apparent intention to utilize this information to aid the sale and marketing of competing services and products is the height of inequitable and dishonorable business practice. By their implausible actions, Defendants have gained an unfair competitive advantage that the Agreements' covenants not to compete were

8

expressly intended to preclude. Because most System customers are long-term and new clients are difficult to cultivate, the attempt by Defendants to convert all S&D-serviced accounts to Paytek will essentially eliminate Plaintiff's presence in the Memphis and St. Louis areas and significantly decrease its revenue stream. Moreover, if S&D and Perlmutter are allowed to simply exit the System and take all of the clients they serviced with them without repercussion, it is likely many other franchisees with follow their lead and thereby completely destroy Plaintiff and its System.

21.     If Defendants are permitted to continue this course of action, Plaintiff will suffer irreparable harm. Defendants' actions are certain to confuse existing and potential customers and are a direct threat to Plaintiff's interests in its franchise System, its trademarks, in its goodwill and commercial relations with its customers, and in its business reputation.

22.     Plaintiff is entitled to a preliminary injunction forbidding Defendants and their officers, directors, key employees, family members and principals, any affiliate of Defendants, any person owning a controlling interest in Defendants or their affiliates, and any other persons acting in concert or participation with Defendants from operating any business which markets, promotes and/or sells check guarantee, check recovery, check verification, E-check, and any other payment related products or services currently being offered by Plaintiff within the areas defined by Exhibit A of the Agreements until such time as a judgment upon the merits is rendered pursuant to the arbitration provisions of the Agreements.

## COUNT I
## BREACH OF CONTRACT

23. Plaintiff repeats and realleges Paragraphs 1 through 22 of this Complaint as if fully set forth herein.

24. Defendants have violated and threaten to continue to violate numerous provisions of the Agreements, including by soliciting or assisting others in soliciting clients to their competing venture, by failing to return client files, and by utilizing Plaintiff's confidential information. All of these actions are in direct contravention to the covenant not to compete set forth in Agreements as modified by the March 10, 2006 letter.

25. As a direct and proximate result of Defendants breaches and threatened breaches of the Agreements, Plaintiff has suffered harm for which damages are inadequate. In addition, Plaintiff has suffered harm, which damage is in excess of $75,000. Plaintiff will continue to suffer said injury, loss, harm or damage unless and until Defendants are restrained from their unlawful conduct.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS

26. Plaintiff repeats and realleges Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. Plaintiff has protectable trade secrets in its client names, addresses, and data; prospective client names, addresses, and data; and know-how concerning the methods of operation of Plaintiff's System.

28. Plaintiff derives economic value from these trade secrets due to their not being generally known to other persons who could obtain economic value from their disclosure or use.

29. Plaintiff has made reasonable efforts under the circumstances to maintain the secrecy and confidentiality of its trade secrets.

30. Defendants have misappropriated Plaintiff's trade secrets and are using these secrets to compete with Plaintiff and to injure Plaintiff's relations with its clients and potential clients.

31. Plaintiff has been injured and is continuing to be injured by Defendants' misappropriation of its trade secrets.

## COUNT III
## BREACH OF FIDUCIARY DUTY

32. Plaintiff repeats and realleges Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. As a franchisee of Plaintiff's System, who was allowed access to Plaintiff's confidential information, Defendants owed and owe Plaintiff certain fiduciary duties.

34. Among these fiduciary duties are the duty to preserve Plaintiff's confidential information, the duty not to destroy this information, and the duty not to use this confidential information in ways adverse to Plaintiff's interests.

35.   Defendants breached these duties by, among other things, soliciting, diverting, and attempting to divert Plaintiff's clients they were working with, on behalf of Plaintiff, for their own benefit; converting Plaintiff's confidential information and trade secrets for their personal use; and by using Plaintiff's confidential information against Plaintiff's best interests.

36.   Plaintiff has been injured and is continuing to be injured by Defendants' breaches.

## COUNT IV
## INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE BUSINESS RELATIONSHIPS

37.   Plaintiff repeats and realleges Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38.   Plaintiff reasonably expects to enter into valid business relationships with its clients and potential clients.

39.   Upon information and belief, Defendants are aware of Plaintiff's expectancy to enter into valid business relationships with its clients.

40.   Defendants have interfered with and, on information and belief, will continue purposefully to interfere with these prospective business relationships.

41.   Defendants' interference has or will prevent Plaintiff's legitimate expectancies from ripening into valid business relationships.

42. On information and belief, Defendants are intentionally interfering with these prospective business relationships and, by doing so, intend to financially injure Plaintiff.

43. Plaintiff has been injured and will continue to be injured because of Defendants' intentional interference with its prospective business relationships.

## COUNT V
## UNFAIR COMPETITION

44. Plaintiff repeats and realleges Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. By transforming, virtually overnight, its former franchise of Plaintiff's System into a competitor of Plaintiff, Defendants have created confusion in the marketplace with the intent to attain market acceptance for Defendants' products and services based on the merit, reputation and goodwill built up by Plaintiff in conjunction with its well known services.

46. Such actions will enable Defendants to compete unfairly with Plaintiff by marketing and selling its current products and services as those of Plaintiff, or as those which are in some way related to, sanctioned or endorsed by Plaintiff, thereby irreparably harming and damaging Plaintiff's goodwill and business reputation and eroding the distinctive status of Plaintiff's trademarks. Defendants' actions constitute unfair competition under the common law of the Commonwealth of Kentucky.

47. Plaintiff has been injured and will continue to be injured because of Defendants' unfair competition.

## DAMAGES

48. If Defendants are permitted to continue their present course of action, Plaintiff will suffer irreparable harm. Plaintiff will suffer damage to its business reputation and goodwill, an erosion of the distinctive status of its trademarks and loss of sales and profits Plaintiff would have made but for Defendants' acts. Defendants' actions are certain to confuse existing and potential customers and are a direct threat to Plaintiff's interests in its franchise System, its trademarks, in its goodwill and commercial relations with its customers and other agents, and in its business reputation.

49. Unless restrained and enjoined, Defendants will continue the acts complained of herein, all to Plaintiff's irreparable damage. It would be impossible to ascertain the amount of compensation which would afford Plaintiff adequate relief for such acts. Plaintiff's remedy at law is not adequate to compensate for the injuries threatened and injunctive relief is accordingly warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. That this Court issue a Preliminary Injunction precluding Defendants and their officers, directors, key employees, family members and principals, any affiliate of Defendants, any person owning a controlling interest in Defendants or their affiliates, and any other persons acting in concert or participation with Defendants from operating any business which markets, promotes and/or sells check guarantee,

check recovery, check verification, E-check, and any other payment related product or service currently being offered by Plaintiff within the areas defined by Exhibit A of the Agreements until such time as a judgment upon the merits is rendered pursuant to the arbitration provisions of the Agreements.

      B.    That this Court Order Defendants to return all items specified in Section 13(g) of the Agreements, including but not limited to, files of clients, all lists of customers and potential customers, all manuals and software, and all uncollected checks to Plaintiff in care of its counsel C. Tyson Gorman, WYATT, TARRANT & COMBS, LLP, 500 West Jefferson Street, Suite 2800, Louisville, Kentucky 40202-2898.

      C.    That this Court Order Defendants to arrange for the following telephone numbers to be transferred to Plaintiff in accordance with Section 13(j) of the Agreements: (901) 542-9200; (901) 368-4866; and (800) 859-5567.

      D.    That Plaintiff be awarded its costs incurred in this action;

      E.    That Plaintiff be awarded its reasonable attorneys' fees and costs;

      F.    That the Court grant Plaintiff such other and further relief as it shall deem just.

## VERIFICATION

Comes the affiant, Louis Pomerance, Member and Authorized Agent of Plaintiff Checkcare Enterprises, LLC, first here duly sworn, and states that the facts stated in this Verified Complaint are true and accurate to the best of his knowledge and belief.

*Louis Pomerance*

Louis Pomerance

Member and Authorized Agent of

Plaintiff Checkcare Enterprises, LLC

COMMONWEALTH OF KENTUCKY  )
                                                         )  :SS
COUNTY OF JEFFERSON            )

The foregoing instrument was subscribed, sworn to and acknowledged before me this 19th day of June, 2006, by Louis Pomerance, Member and Authorized Agent of Plaintiff Checkcare Enterprises, LLC.

My commission expires: 09-13-2008 .

NOTARY PUBLIC

16

Respectfully submitted,

s/ Kim Koratsky
Kim Koratsky
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee 38120-4367
901.537.1000
Fax No.: 901.537.1010
email: kkoratsky@wyattfirm.com

C. Tyson Gorman
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, Suite 2800
Louisville, Kentucky 40202-2898
502.589.5235
Fax No.: 502.589.0309
email: tgorman@wyattfirm.com

***Counsel for Plaintiff Checkcare Enterprises, LLC***

20266644.1